UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

MUHAMMAD HASSAN,

        Petitioner,

    v.

THOMAS FEELEY, in his official
capacity as Field Office Director,
Buffalo Field Office, U.S. Immigration
& Customs Enforcement, DAVID
PEKOSKE, in his official capacity as
Acting Secretary, U.S. Department of
Homeland Security, and ROBERT M.
WILKINSON, in his official capacity as
Acting Attorney General of the United
States,

        Respondents.[1]

_____

21-cv-82 (JLS)

## DECISION AND ORDER

Petitioner Muhammad Hassan, a citizen of Pakistan, commenced this habeas

corpus proceeding under 28 U.S.C. § 2241 on January 18, 2021.  Dkt. 1; Dkt. 5.

Hassan also filed a motion for a temporary restraining order.  Dkt. 2.  In these

filings, Hassan seeks an order from this Court directing his removal to Canada, not

Pakistan (or any other country); in the alternative, he seeks a stay of removal to

Pakistan until the Court resolves this action and to allow him "meaningful access to

a motion to reopen . . . with the Board of Immigration Appeals" and, "if needed, a

_____

[1] The Court adopts the updated caption used by the parties in their later briefing.
*See* Dkt. 7, at 1 n.1; Dkt. 10, at 1 n.1.

petition for review . . . with the Circuit Court of Appeals." *See, e.g.*, Dkt. 1, at 4 ¶ 2, 6 ¶ 6; Dkt. 2, at 1.

For the following reasons, the petition is dismissed for lack of subject matter jurisdiction.

## BACKGROUND

### I.    Factual Background

Hassan is a citizen of Pakistan who entered the United States in January 2019 without going through a port of entry. Dkt. 1, at 12 ¶ 27; Dkt. 7, at 2. Upon arrival, he was taken into the custody of the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"). Dkt. 1, at 12 ¶ 27.

On March 20, 2019, Hassan admitted the allegations in the Notice to Appear and was found removable by the immigration judge. Dkt. 7, at 2; Dkt. 7-1, at 2. The immigration judge declined Hassan's designation of a country and designated Pakistan in the event of removal. Dkt. 7, at 3; Dkt. 7-1, at 2. Hassan, who maintains that he fled Pakistan due to persecution resulting from his conversion from a Sunni Sect to a Shia Sect of Islam, "initiated a claim for protection." Dkt. 1, at 12-13 ¶ 27. According to Hassan, he was "deemed to have a credible fear of removal and a reasonable chance of success on the merits of his asylum application." *Id.*

The immigration judge held a trial on Hassan's asylum application on July 24, 2019 and August 14, 2019. *See* Dkt. 7, at 3; *see generally* Dkt. 7-1. The immigration judge then denied Hassan's application for protection from removal

2

and ordered his removal to Pakistan.  *See generally* Dkt. 7-1; *see also* Dkt. 1, at 13 ¶

28; Dkt. 7, at 3.  Hassan appealed to the Board of Immigration Appeals ("BIA"); his

appeal was dismissed on October 29, 2020.  Dkt. 1, at 13 ¶ 28.  He "did not file any

petition for review with the Circuit within the statutory deadline."  Dkt. 10, at 14.

Hassan was released from detention on April 22, 2020 because of "health

related custodial measures implemented in response to the COVID-19 pandemic."

Dkt. 1, at 13 ¶ 28.  He entered Canada on November 20, 2020, at which point he

was apprehended by officers of the Royal Canadian Mounted Police and transported

to an official port of entry.  *Id.* at 13 ¶ 29.  There, the Canada Border Services

Agency "commenced processing his application to enter Canada, collected his

biometric and biographic information, and issued him a Canadian immigration

identification number."  *Id.*  That Agency also issued Hassan a temporary "Direction

to Return to the United States" pursuant to Section 41(d) of the Canadian

Immigration and Refugee Protection Regulations.  *Id.* at 14 ¶ 31; Dkt. 10, at 5.

Hassan was then driven to the United States and "delivered . . . into the custody" of

DHS.  Dkt. 1, at 14 ¶ 32.

Hassan applied to the Canadian Minister of Immigration for an exemption to

the pandemic-related border closure, "which would allow him to return to Canada

prior to the border's general reopening."  Dkt. 10, at 5; Dkt. 1, at 14 ¶ 33.  On

December 18, 2020, Canada's Minister of Citizenship and Immigration granted

Hassan that exemption.  Dkt. 1, at 14-15 ¶ 34; Dkt. 10-5.

Hassan maintains that, upon information and belief, his Canadian counsel informed Respondents (hereinafter "the Government") that he had been granted an exemption. Dkt. 1, at 15 ¶ 35. Between December 18, 2020 and January 8, 2021, Canadian counsel negotiated with the Canada Border Services Agency to secure Hassan's return to the border "as soon as possible." *Id.*; Dkt. 10, at 5. Canadian counsel was initially informed that Hassan "would be transported to the border for examination and admission to Canada during the week of January 11, 2021." Dkt. 1, at 15 ¶ 35. Later, however, Canadian counsel was "informed that DHS would not transport [Hassan] . . . to the Canadian border for entry." *Id.* Instead, DHS transferred Hassan to the Alexandria Staging Facility in Louisiana and then to Florence, Arizona for Hassan's removal to Pakistan. Dkt. 10, at 5.

## II. Procedural History

Hassan filed the instant petition on January 18, 2021. Dkt. 1; Dkt. 5. On January 19, 2021, Hassan filed a motion for a temporary restraining order. Dkt. 2. Hassan's petition does not purport to challenge his detention; instead, Hassan asks the Court to bar his removal to Pakistan and direct removal to Canada. He argues that he has a "right not to be deported to Pakistan, when Canada stands ready to accept him." Dkt. 1, at 16. Removal to Pakistan, Hassan argues, violates his substantive due process rights. *Id.* at 22 ¶¶ 54-55.

In the alternative, Hassan asks that the Court stay his removal pending the BIA's adjudication of his motion to reopen his order of removal and, if needed, file "a petition for review . . . with the Circuit Court of Appeals." *See* Dkt. 1, at 4 ¶ 2; *id.* at

4

15 ¶ 36.  Absent a stay of removal, Hassan argues, his substantive and procedural due process rights will be violated.  *Id.* at 23 ¶¶ 56-57.

The parties appeared before this Court on January 19, 2021.  Dkt. 4. Following confirmation from the Government that Hassan's removal was not imminent, this Court ordered an accelerated briefing schedule on Hassan's petition and motion for a temporary restraining order.  *Id.*  On January 22, 2021, the Court directed the Government to address the Department of Homeland Security's January 20, 2021 Memorandum, "Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities," to the extent the Government believes it affects this case.  Dkt. 6.

On January 26, 2021, the Government moved to dismiss Hassan's petition and opposed his motion for a temporary restraining order.  Dkt. 7.  Hassan responded on January 30, 2021.  Dkt. 10.

In addition, on February 1, 2021, Hassan moved "for discovery and/or interrogatories."  Dkt. 11.  That motion appears to be a response to the Government's "den[ial] that the United States ever agreed to deport [Hassan] to Canada."  Dkt. 7, at 11.  According to Hassan, the Government's denial of this "central issue"—which "goes to both this Court's subject matter jurisdiction and the substantive merits of the claim"—warrants discovery concerning, for example, whether any "understanding was ever developed by agents of the United States to remove [Hassan] to Canada," whether there are "practical impediments" to

removing Hassan to Canada, and whether there is a difference in cost between removing Hassan to Canada instead of Pakistan.  Dkt. 11, at 4.

## DISCUSSION

### I.  Jurisdiction

As a threshold matter, this Court must determine whether it has jurisdiction over this action.  The Government argues for dismissal on the basis that 8 U.S.C. § 1252(a)(5), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(g) strip this Court of jurisdiction to stay Hassan's removal and to review his challenge to ICE/DHS's discretionary authority to execute orders of removal.  Dkt. 7, at 4-12.

Hassan argues that "8 U.S.C. §§ 1252(a)(5) or (b)(9), which strip federal courts of jurisdiction to review challenges to an order or removal[,] do not apply in this case" because he seeks "to engage in alternate processes for relief before his removal" rather than to "challenge legal errors in the order of removal."  *See* Dkt. 1, at 21 ¶ 51; *see also id.* at 22 ¶ 52.  Similarly, Hassan argues that Section 1252(g) does not affect the Court's jurisdiction because he does not "challenge ICE's discretion regarding his removal order."  *Id.* at 22 ¶ 52.  Rather, he argues his claim is constitutional in nature.  *Id.*  In addition, Hassan appears to argue that the Government's interpretation of 8 U.S.C. § 1252(a)(5), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(g) would violate the Suspension Clause; Hassan argues he has a right to habeas relief under the Suspension Clause notwithstanding those jurisdiction-stripping provisions.  *See* Dkt. 1, at 17-19 ¶¶ 43-46; *id.* at 22 ¶ 53; Dkt. 10, at 11-12.

6

The REAL ID Act of 2005 mandates that judicial review of all administratively final orders of removal take place exclusively in the courts of appeals: "[n]otwithstanding any other provision of the law (statutory or nonstatutory) . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). This provision "clearly preclude[s] [a] district court's entertaining of a direct challenge to a removal order." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). In *Delgado*, the Second Circuit held that prohibition "applies equally to preclude . . . an indirect challenge" to a removal order. *Id.* Whether a suit against immigration authorities is a challenge to a removal order will "turn on the substance of relief that a plaintiff is seeking." *Id.* (holding, in mandamus action to compel an adjudication on the merits of her I-212 application, that the relief the petitioner sought was an indirect challenge to an order of removal).

Also relevant to this Court's habeas jurisdiction is 8 U.S.C. § 1252(g), which provides that, "[n]otwithstanding any other provision of law (statutory or nonstatutory), including any . . . habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, *or execute removal orders against any alien*" (emphasis added).

7

This Court concludes, as have numerous courts in this Circuit and others, that Section 1252 deprives district courts of jurisdiction over requests to stay orders of removal.[2] *See Ahmed v. Barr*, No. 20-CV-395 (JLS), 2020 WL 2395694, at *2 (W.D.N.Y. May 12, 2020) (dismissing petition that sought a stay of removal for lack of subject matter jurisdiction); *Scott v. Napolitano*, 618 F. Supp. 2d 186, 191 (E.D.N.Y. 2009) ("[T]hese provisions of § 1252 operate to strip district courts of jurisdiction to stay an order of removal, as well."); *Al-Garidi v. Holder*, No. 09-CV-6160L, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009) ("This Court and other district courts throughout the country have routinely held that because district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal.") (collecting cases); *Ashqar v. Hott*, No. 1:19-cv-716, 2019 WL 2712276, at *4 (E.D. Va. June 5, 2019) (Section 1252(g) barred jurisdiction because petitioner's motion to stay removal pending adjudication of his motion to reopen sought review of the execution of a removal order). *But see You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 458 n.5, 460 (S.D.N.Y. 2018) (granting petitioner a stay of removal and rejecting various arguments that Section 1252 strips the court of jurisdiction in light of *Jennings* and its rejection of "broad readings" of the statute's jurisdiction-stripping provisions).

---

[2] Section 1252(g) also strips the Court of jurisdiction to review Hassan's Administrative Procedure Act claims. *See* Dkt. 1, at 19-20 ¶¶ 47-48; *see also E.F.L. v. Prim*, ___ F. 3d ___, 2021 WL 244606, at *5 (7th Cir. Jan. 26, 2021) ("The APA is inapplicable because § 1252(g) precludes judicial review and because DHS's decision to execute [petitioner's] removal order is discretionary.") (citations omitted).

Courts have reached this conclusion in cases addressing circumstances similar to those of Petitioner, namely, petitions requesting a stay of removal pending the BIA's decision on Petitioner's motion to reopen.  *See Ahmed*, 2020 WL 2395694, at *2 (concluding that the court lacked jurisdiction to hear the petitioner's request for a stay of a removal order pending adjudication of his motion to reopen at the BIA because that request indirectly challenged his removal order); *Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344, 349-50 (S.D.N.Y. 2019) (where the district court's stay would effectively compel adjudication of petitioner's motion to reopen, 8 U.S.C. § 1252 deprived the court of jurisdiction to adjudicate petitioner's petition request for a stay of removal); *Vidhja v. Whitaker*, No. 19 Civ. 613 (PGG), 2019 WL 1090369, at *3 (S.D.N.Y. Mar. 6, 2019) (pursuant to Section 1252(a)(5), the court lacked jurisdiction to grant petitioner a stay of removal pending resolution of his motion to reopen).  If resolved in Hassan's favor, the motion to reopen would result in the vacatur or modification of his underlying order of removal.  *See Andoh v. Barr*, 19 Civ. 8016 (PAE), 2019 WL 4511623, at *4 (S.D.N.Y. Sept. 18, 2019) ("As in *Delgado*, the underlying action through whose completion petitioner seeks a stay of removal challenges the underlying order of removal.")  Thus, Hassan's request for a stay of the removal order is an indirect challenge to his removal order, and Section 1252 strips the Court of jurisdiction to hear the motion.  *Id.*

Hassan also asks the Court to declare that he not be removed to any country except for Canada.  This request seeks to prevent the implementation of his removal order and, therefore, also falls beyond the Court's jurisdiction.  Indeed, the relief

9

Hassan seeks "threaten[s] the execution of the removal order and challenge[s] ICE's discretionary decision to remove him to [Pakistan]" pursuant to 8 C.F.R. § 1240.12(d).  *See Bumu v. Barr*, No. 6:20-CV-06742-EAW, 2020 WL 6465433, at *3 (W.D.N.Y. Nov. 3, 2020) (concluding the court lacked jurisdiction to stay the petitioner's removal to Mali where the petitioner argued that he was from Sierra Leonne and his removal to Mali would violate his constitutional rights); *see also Tonfack v. Attorney Gen. U.S.*, 580 F. App'x 79, 81 (3d Cir. 2014) (affirming district court's determination that it lacked jurisdiction over Section 2241 petition; rejecting petitioner's argument that his petition, in which he argued that "Cameroon is not a proper country of removal," was "independent of his removal order").  Thus, Section 1252(a)(5) and (g) deprive this Court of jurisdiction over this aspect of Hassan's petition, too.[3]

## II.   Suspension Clause

The conclusion that Section 1252 strips district courts of jurisdiction does not end the analysis.  Hassan asserts an additional, constitutional claim: specifically, if 8 U.S.C. § 1252 is interpreted to remove jurisdiction over this type of habeas petition, then the statute results in an unconstitutional suspension of the writ of

---

[3] Although no motion has been filed, Hassan seeks "leave to file an amended petition . . . wherein [his] claims regarding the enforceability of the 100 Day Moratorium can be properly explicated." Dkt. 10, at 20. The Court denies this request for leave to amend. The January 20, 2021 DHS Memorandum does not alter the Court's jurisdiction in this case. Indeed, for the reasons explained above, the Court lacks jurisdiction to review the January 20, 2021 DHS Memorandum as applied to Hassan. In addition, the Court disagrees with Hassan that discovery would bear on the Court's jurisdiction in this case and, therefore, denies Hassan's motion for discovery. Dkt. 11.

habeas corpus.  Dkt. 1, at 17-19 ¶¶ 43-46.  The Government maintains that the Suspension Clause is not implicated where a petitioner seeks injunctive relief and, alternatively, even if the Suspension Clause applies, Hassan has adequate and effective substitute procedures to habeas relief.  Dkt. 7, at 12-16.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless in cases of rebellion or invasion the public safety may require it."  U.S. Const. art. I, § 9, cl. 2.  Hassan's case does not implicate the Suspension Clause because the relief he seeks—that the Court direct his removal to a certain country and, alternatively, stay his removal order while he seeks relief in proceedings before the BIA—falls outside of the scope of the traditional habeas remedy of release.  *See generally Dep't of Homeland Sec. v. Thuraissigiam*, ___ U.S. ___, 140 S. Ct. 1959 (2020); *see also Prim*, 2021 WL 244606, at *5 ("[T]he Suspension Clause in inapplicable because [petitioner's] habeas petition does not contest the lawfulness of restraint or seek to secure release from custody; it instead vies for her right to remain in the United States or to obtain administrative review potentially leading to that result.") (citations, quotations, and alterations omitted).

Furthermore, even if the Suspension Clause is implicated, adequate substitutes for habeas corpus relief exist—for example, Hassan's motion to reopen pending at the BIA.  While this Court is aware there is a risk of Hassan's removal pending exhaustion of administrative processes before the BIA, this possibility does not violate the Constitution's Suspension Clause.  *See Ahmed*, 2020 WL 2395694, at

*3; *Barros Anguisaca*, 393 F. Supp. 3d at 351; *see also Ashqar*, 2019 WL 2712276, at *5 (citing the petitioner's ability to pursue an appeal of the immigration court's denial of his motion to reopen from abroad to conclude the substitute remedies Congress provides do not violate the Suspension Clause) (collecting cases). *But see Diaz-Amezcua v. Barr*, 402 F. Supp. 3d 963, 966-68 (W.D. Wash. 2019) (concluding that the plain meaning of 8 U.S.C. § 1252 deprives the court of jurisdiction to stay the petitioner's removal pending resolution of his motion to open, but that the court had jurisdiction in this case because Section 1252(g) as applied to this petitioner violated the Suspension Clause).

The Court recognizes that Hassan's alleged plight is sympathetic on a human level.  Under the Constitution and applicable statute, and subject to the circuit courts' power to decide petitions for review, the political branches of government—not this Court—have authority to address such concerns.

<u>CONCLUSION</u>

For the reasons stated above, the Court dismisses this action for lack of subject matter jurisdiction.  Respondents' motion to dismiss (Dkt. 7) is granted; Hassan's motion for discovery (Dkt. 11) is denied.  Hassan's motion for a temporary restraining order (Dkt. 2) is dismissed as moot.  The Clerk of Court shall close this case.

SO ORDERED.

Dated:      February 4, 2021
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE